(No. 56776.—

ILLINOIS CEREAL MILLS, INC., Appellant, v. THE DEPARTMENT OF REVENUE, Appellee.

*Opinion filed December 1, 1983.*

McDermott, Will & Emery, of Chicago (Hamilton Smith and John J. Jawor, of counsel), for appellant.

Tyrone C. Fahner and Neil F. Hartigan, Attorneys

General, of Springfield (Paul J. Bargiel and Patricia Rosen, Special Assistant Attorneys General, of counsel), for appellee.

James F. Flanagan, George W. Keeley, Louis R. Marchese, and Michael T. Reid, of Halfpenny, Hahn & Roche, of Chicago, for *amicus curiae* Illinois Wholesaler-Distributors Association.

Charles G. Chester and Nicholas J. Nedeau, of Martin, Craig, Chester & Sonnenschein, of Chicago, for *amicus curiae* Illinois Soft Drink Association, Inc.

JUSTICE WARD delivered the opinion of the court:

The plaintiff, Illinois Cereal Mills, filed a complaint against the defendant, the Department of Revenue (Department), for administrative review in the circuit court of Edgar County, to set aside an assessment of taxes, penalties and interest of $67,135.05 under the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 440 *et seq.*), the Municipal Retailers' Occupation Tax Act (Ill. Rev. Stat. 1979, ch. 24, par. 8—11—1), and the Use Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 439.1 *et seq.*). Holding for the plaintiff, the circuit court modified the assessment. The appellate court reversed (106 Ill. App. 3d 53), and we granted the plaintiff's petition for leave to appeal under Rule 315 (87 Ill. 2d R. 315). We granted leave to the Illinois Wholesaler-Distributors Association and the Illinois Soft Drink Association to file briefs *amici curiae*. Their briefs support the plaintiff.

The plaintiff is engaged principally in manufacturing corn products. The plaintiff sells to other manufacturers who process the product and resell it primarily as livestock feed. The Department conducted a field audit of the plaintiff's sales revenues for the period from January 1, 1974, through February 28, 1977. The Department's auditor disallowed $710,830 in sales, the greater portion of which the plaintiff asserted to be nontaxable as sales

for resale. The Department issued a notice of tax liability, to which the plaintiff filed a protest and requested an administrative hearing. Following a hearing, the hearing officer recommended a final assessment of approximately $67,000, and the Department issued a final assessment for that amount. The assessment included a claimed indebtedness under the Use Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 439.1 *et seq.*). The use tax assessment has not been challenged on this appeal. The Municipal Retailers' Occupation Tax Act incorporates by reference all the provisions of the Retailers' Occupation Tax Act which are pertinent to this case, and therefore only the latter, referred to hereafter as "the Act," need be cited and considered.

At the hearing, the Department asserted that approximately $710,000 in sales, most of which were claimed by the taxpayer to be nontaxable as sales for resale, were taxable. The Department's evidence consisted mainly of testimony of its auditor, Burl Good, his audit, and corrected returns. The auditor found that, considering the nature of the products sold and the large amounts purchased, the sales in question appeared to be sales for resale. However, he concluded that the plaintiff was liable for the retailers' occupation tax because the resale certificates (which we will later refer to) did not comply with the documentation and verification requirements of section 2c of the Act (Ill. Rev. Stat. 1979, ch. 120, par. 441c). In some instances the auditor found the resale certificates were improper because they were not signed by the purchasers from the taxpayer but by those to whom the purchasers had resold the products. In other cases the certificates lacked registration or resale numbers or were not dated.

The plaintiff presented testimony from certain of its officers, employees and purchasers that the sales in question had been almost entirely sales for resale. The

plaintiff acknowledged liability for taxes on approximately $113,000 in sales revenue from retail sales which were, the plaintiff stated in oral argument, principally accommodation sales made for good-will purposes. Some of that testimony was to the effect that registration numbers could not be obtained for some of the questioned sales because the purchasers had later gone out of business. The plaintiff also introduced invoices for sales in the questioned audit period, as well as affidavits and testimony from purchasers, to show that these sales were, in fact, for resale. The taxpayer's December 1975 tax return was also admitted into evidence. As we noted, the plaintiff admitted that it had made some retail sales, but in December 1975, as an example, taxable retail sales amounted to only .66% of receipts from the taxpayer's total sales for the month of over $4 million. The plaintiff argues that this is not only representative of its own yearly retail sales percentage, but it also states that the practice of other Illinois wholesalers is likewise to make minimal amounts of retail sales and that such sales constitute about the same percentage of their total sales.

The hearing officer adopted the auditor's recommendation that the certificates of resale not be accepted, and found that the taxpayer had not satisfactorily documented the resale character of its sales under section 2c of the Act (Ill. Rev. Stat. 1979, ch. 120, par. 441c). The Department accepted the hearing officer's recommended assessment of $67,000 based on sales of $710,830.

Before the circuit court the plaintiff acknowledged its retailers' occupation tax liability for $26,000, representing admitted retail sales of approximately $113,000. The plaintiff challenged, however, the balance of the assessment, *i.e.*, $41,000, saying that the balance represented not retail sales, but sales for resale. The circuit court agreed with the plaintiff, but the appellate court reversed as to the claimed sales for resale and reinstated

the challenged assessment balance of $41,000 (106 Ill. App. 3d 53, 57-58).

The taxpayer contends (1) that sections 1 and 2c of the Act do not apply to it, as it is a wholesaler making tax-exempt sales for resale, with only an insignificant percentage of its sales being sales for retail; (2) if section 2c does apply to it, the section's requirements are not mandatory and noncompliance with its provisions simply creates a presumption of tax liability that may be rebutted, which the plaintiff's evidence in fact accomplished; (3) if noncompliance with requirements of section 2c renders sales for resale *per se* taxable, then section 2c violates section 13 of article IV of the Constitution of Illinois, or (4) section 2c violates the uniformity clause of the Constitution of Illinois and the equal protection clause of the United States Constitution, or (5) it violates the export clause of the United States Constitution, and (6) the Department should be collaterally estopped from raising certain issues on appeal.

The interpretation and applicability of section 2c are central to the questions on this appeal. The section was added to the Act in 1965 (1965 Ill. Laws 116), and as amended in 1967 (1967 Ill. Laws 257) it reads:

"If the purchaser is not registered with the Department as a taxpayer, but claims to be a reseller of the tangible personal property in such a way that such resales are not taxable under this Act or under some other tax law which the Department may administer, such purchaser (except in the case of an out-of-State purchaser who will always resell and deliver the property to his customers outside Illinois) shall apply to the Department for a resale number. * * *

Upon approval of the application, the Department shall assign a resale number to the applicant and shall certify such number to him. * * *
* * *
Except as provided hereinabove in this Section, no sale shall be made tax-free on the ground of being a sale

for resale unless the purchaser has an active registration number or resale number from the Department and furnishes that number to the seller in connection with certifying to the seller that any sale to such purchaser is nontaxable because of being a sale for resale."

Section 2 of the Act (Ill. Rev. Stat. 1979, ch. 120, par. 441) states the persons liable for the tax. The opening sentence of section 2 reads:

"A tax is imposed upon persons engaged in the business of selling tangible personal property at retail at the rate of [a given percentage] of the gross receipts from such sales of tangible personal property ***."

Section 1 of the Act defines terms relevant here:

" 'Sale at retail' means any transfer of the ownership of or title to tangible personal property to a purchaser, for the purpose of use or consumption, and not for the purpose of resale in any form as tangible personal property to the extent not first subjected to a use for which it was purchased, for a valuable consideration: ***.

'Sale at retail' shall be construed to include any transfer of the ownership of or title to tangible personal property to a purchaser, for use or consumption by any other person to whom such purchaser may transfer the tangible personal property without a valuable consideration, and to include any transfer, whether made for or without a valuable consideration, for resale in any form as tangible personal property unless made in compliance with Section 2c of this Act.

* * *

'Purchaser' means anyone who, through a sale at retail, acquires the ownership of or title to tangible personal property for a valuable consideration." Ill. Rev. Stat. 1979, ch. 120, par. 440.

Section 4 of the Act provides that a corrected return prepared by the Department will be deemed *prima facie* correct and is *prima facie* evidence of the correctness of the amount of tax due. (Ill. Rev. Stat. 1979, ch. 120, par. 443.) When the Department established its *prima facie* case here by introducing its corrected returns into evi-

dence, the burden shifted to the plaintiff taxpayer to overcome the *prima facie* evidence by showing the transaction to be nontaxable. (See *United Air Lines, Inc. v. Johnson* (1981), 84 Ill. 2d 446, 455; *Howard Worthington, Inc. v. Department of Revenue* (1981), 96 Ill. App. 3d 1132, 1134.) The plaintiff contends that its evidence was sufficient to prove the tax-exempt resale character of the sales involved and thus overcome the Department's *prima facie* case. Certainly if section 2c, with its documentation requirements, was not applicable, the plaintiff's evidence was clearly sufficient to rebut the Department's *prima facie* case. (See *Fashion-Bilt Cloak Manufacturing Co. v. Department of Finance* (1943), 383 Ill. 253.) The first question, therefore, is whether section 2c was applicable.

The plaintiff relies on *Dearborn Wholesale Grocers, Inc. v. Whitler* (1980), 82 Ill. 2d 471, in arguing that section 2c has no application. In *Dearborn*, the plaintiff, a wholesale grocer, filed a complaint for administrative review of assessments for taxes under the Retailers' Occupation Tax Act. At the administrative hearing, the evidence was undisputed that all of the plaintiff's sales were for resale. The evidence consisted of testimony and affidavits from Dearborn's salesmen and truck drivers that all of the items purchased from the plaintiff were sold for resale. The plaintiff, however, did not produce any resale certificates from its purchasers. On this evidence, the hearing officer made a finding that the plaintiff was a wholesale grocer. Since the plaintiff did not meet the documentation requirements of section 2c, however, the claimed sales for resale were found to be taxable. The circuit court set aside the decision in favor of the Department, but the appellate court reversed. We, in turn, reversed the appellate court, holding that section 2c was inapplicable under the circumstances.

The only factor to distinguish between *Dearborn* and the case here is that the plaintiff, as it acknowledges, made what appears to be a minute portion of its total sales at

retail. In *Dearborn* it appears that the plaintiff apparently made "no retail sales at all." (82 Ill. 2d 471, 478.) The Department and the appellate court here grounded their determination of the plaintiff's liability on this distinction.

This court, in conformity with the plain language of section 2 of the Act, has consistently held that the retailers' occupation tax is imposed upon persons engaged in the business of selling tangible personal property at retail. (*United Air Lines, Inc. v. Johnson* (1981), 84 Ill. 2d 446, 450; *Dearborn Wholesale Grocers, Inc. v. Whitler* (1980), 82 Ill. 2d 471, 477; *Hagerty v. General Motors Corp.* (1974), 59 Ill. 2d 52, 54-55.) It cannot be realistically said that the plaintiff was engaged in the business of selling at retail when, for example, over 99% of its sales in one of the audit periods were admittedly wholesale sales; clearly the plaintiff is a wholesaler. In *Dearborn* we declared that section 2c of the Act was not applicable to wholesalers, and that the documentation required under it to exempt a sale to a purchaser who is not the ultimate consumer is not required of wholesalers. In noting that if section 2c were considered to extend to wholesalers grave constitutional problems, including those of multiple taxation, would be created, we stated:

> "If section 2c is construed as applying only to retailers, the problems just discussed are eliminated. Analysis of the section discloses that such a construction is indeed the correct one. The key term in the section is 'purchaser,' which is defined in the Act as *'anyone who, through a sale at retail,* acquires the ownership or title to tangible personal property for a valuable consideration.' (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 120, par. 440.) The plaintiff's customers are plainly not 'purchasers' from it in the sense in which the Act defines that term, and it is not the transactions between the plaintiff and its customers at which the section is directed.
>
> The apparent purpose of section 2c is rather to provide a means of verifying a claim made by a person subject to the Act as a retailer that a particular sale by him

is exempt from tax because the purchaser is not himself the ultimate user or consumer of the property." *Dearborn Wholesale Grocers, Inc. v. Whitler* (1980), 82 Ill. 2d 471, 479.

In this case, too, it is plain that the buyers in the questioned sales from the plaintiff were not purchasers within the meaning of the Act; they were acknowledged by the Department not to be the ultimate users or consumers of the property sold. In *Dearborn*, we observed that any "attempt by indirection to extend the retailers' occupation tax to one not engaged in that business [retail sales] would invalidate the amendments [to the Act]." (82 Ill. 2d 471, 478.) The Department's position here would amount to an attempt by indirection to extend the liability under the Act to the plaintiff, a wholesaler.

The Department nevertheless contends that these sales voluntarily made by the plaintiff caused the plaintiff to be regarded as a retailer and subject to section 2c's documentation requirements. Therefore, as it is a retailer, argues the Department, sales of the plaintiff not meeting section 2c's documentation requirements are taxable, despite the plaintiff's proof that the questioned sales were not retail sales but sales for resale. It would be violative of the Act's intendment, however, to regard the plaintiff as a retailer on the basis of the small percentage of retail sales which the plaintiff admits it occasionally made, which in the main were made from accommodation and good-will motives.

In *Mobil Oil Corp. v. Johnson* (1982), 93 Ill. 2d 126, 134, we stated:

> "It has long been the rule in this State that one who sells 'tangible personal property for use or consumption and not for re-sale, and does so not occasionally but as a business or occupation' is making retail sales subject to the Retailers' Occupation Tax Act. (*Franklin County Coal Co. v. Ames* (1934), 359 Ill. 178, 183.)"

Making retail sales was not the business or occupation of the plaintiff. Retail sales were only occasional. The neg-

ligible amount of retail sales did not convert the plaintiff into a retailer and did not change sales for resale into sales for use or consumption. In *Mobil* we observed:

> "The application of the Act to the sale depends upon whether the purchased property was used or consumed by the buyer or whether it was resold by the buyer. (See, *e.g., American Airlines, Inc. v. Department of Revenue* (1974), 58 Ill. 2d 251; *Burrows Co. v. Hollingsworth* (1953), 415 Ill. 202; *Modern Dairy Co. v. Department of Revenue* (1952), 413 Ill. 55." (93 Ill. 2d 126, 134.)

The plaintiff's evidence "showed conclusively," as the appellate court's opinion put it, that the property sold in the questioned sales was resold by the buyers. The Act, therefore, had no application here. Accordingly, we hold that section 2c of the Act was not applicable to this plaintiff or to the questioned sales. The plaintiff's evidence sufficiently rebutted the Department's *prima facie* case. Under the disposition we make, there is no need to address the other points raised by the plaintiff.

For the reasons given, the judgment of the appellate court is reversed and that of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*